

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Jesse Hinkle ("Employee") and Dollar Tree Stores, Inc. ("Dollar Tree" or "Employer") (Employee and Employer are collectively referred to herein as the "Parties"), and is effective as of the last date on which the Parties sign the Agreement.

WHEREAS, Employee is a former employee of Dollar Tree;

WHEREAS, on or about July 5, 2016, Employee filed a complaint against Dollar Tree in Florida state court alleging violations of the Fair Labor Standards Act ("FLSA") and state law; on or about August 15, 2016, Dollar Tree removed the matter to federal court ("Complaint");

WHEREAS, on August 22, 2016, Dollar Tree filed a Motion to Dismiss and Compel Arbitration, or in the Alternative, Stay Proceedings and Compel Arbitration;

WHEREAS, Employee filed a claim for workers' compensation benefits for injuries allegedly sustained on April 30, 2016, claim no. 30165836567-0001 ("Workers' Compensation Claim");

WHEREAS, on October 13, 2016, the federal court stayed the court case and directed the Parties to proceed with arbitration;

WHEREAS, on or about June 27, 2017, Employee submitted a Demand for Arbitration, *Jesse Hinkle v. Dollar Tree Stores, Inc.* ("Demand"), alleging that Dollar Tree failed to pay Hinkle proper compensation under the FLSA, Florida Constitution, and Florida Minimum Wage Act;

WHEREAS, to avoid the possible future costs, burdens, or distractions of litigation, the Employee and Employer now desire and, through the execution of this Agreement, intend to dispose of and resolve fully and completely any and all disputes, causes of action, claims, issues, and/or differences between Employee and Employer (with the sole exception of the Workers' Compensation Claim), including, but not limited to, those which have arisen, could have arisen out of, and/or are in any way related to the Complaint, Demand, and/or Employee's employment with Employer, separation from employment with Employer, and any and all matters that might arise between Employee and Employer as a result of any act that has heretofore occurred.

NOW THEREFORE, in consideration of the mutual promises and covenants set forth below, the Parties agree as follows:

1. <u>Payment to Employee</u>. In exchange for the promises made by Employee in this Agreement, Employer agrees to make the following payment in the following amounts and upon the terms set forth in this Agreement:

    (a) Employer will issue Employee a check in the gross amount of One Thousand Eight Hundred and No Cents ($1,800.00), minus all applicable tax withholdings, such amount representing consideration for settlement of any and

1

all claims, asserted and unasserted for lost wages, and such amount to be reported on a Form W-2 to Employee.

(b)     Employer will issue Employee a check in the net amount of One Thousand Eight Hundred and No Cents ($1,800.00), for liquidated damages, for which an IRS Form 1099 will be issued to Employee.

(c)     Employer will issue Employee a check in the net amount of Two Hundred and No Cents ($200.00), such amount representing consideration for the general release, no rehire agreement, class action waiver, and other consideration set forth in this Agreement, for which an IRS Form 1099 will be issued to Employee.

(d)     Employer will issue a check to Cohen Law Group, on Employee's behalf, in the amount of Five Thousand Two Hundred and No Cents ($5,200.00), for attorneys' fees and costs, for which an IRS Form 1099 will be issued to Cohen Law Group and to Employee.

Employer shall send the checks to Employee, care of his counsel's office, Cohen Law Group, 350 North Lake Destiny Road, Maitland, Florida 32751, in the foregoing amounts within fifteen (15) business days of the last to occur of the following: (a) Employer's counsel, Theresa Waugh, has received a copy of this Agreement bearing the original signature of Employee; (b) Employee's time to revoke acceptance of this Agreement has expired and he has not exercised the revocation option described herein; (c) Employer's counsel, Theresa Waugh, has received all necessary IRS W-9 forms from Employee's counsel, Kevin Vorhis; and (d) the Court has dismissed the Complaint with prejudice.

2.     <u>No Consideration Absent Execution of this Agreement</u>. Employee understands and agrees that the payment described above in Paragraph 1 would not be provided except for Employee's execution of this Agreement and the fulfillment of the promises contained in this Agreement.

3.     <u>Fees and Costs</u>. Except as may be otherwise provided in Paragraph 1 above, the Parties agree to bear their own fees, costs, and expenses, including attorneys' fees, in connection with the litigation, negotiation, and settlement of the Complaint and Demand.

4.     <u>No Rehire Provision.</u> Employee agrees that he will not apply for employment with Dollar Tree or any of its parents, subsidiaries, divisions, or affiliates. Execution of this Agreement gives Dollar Tree the right to refuse to employ Employee without liability.

5.     <u>Dismissal with Prejudice of the Complaint</u>. Employee agrees to take all necessary steps to dismiss the Complaint with prejudice and without costs or fees without an award of attorneys' fees or costs. Employee understands that by entering into this Agreement, he is voluntarily agreeing to dismiss his Complaint. This settlement is in full and final satisfaction of any and all Employee's claims, including claims for attorneys' fees and costs (other than as to fees and costs owed, if any, under Fla. Stat. Sec. 440.34 in connection with Employee's Workers' Compensation Claim), whether made by the Employee or his attorney(s), and the Employee hereby agrees that neither he nor his attorney will make any claim for attorneys' fees

2

or costs under any statute or under any other legal theory in the pending matters or in any other matter. Employee represents that other than the Complaint, unperfected Demand and Workers' Compensation Claim, no claim, charge, complaint or action exists against the Employer or Releasees (as defined in Paragraph 6 hereof) in any forum.

6.   Release by Employee of Employer. In exchange for the consideration provided, except as expressly provided below, Employee releases, relinquishes, and gives up (and agrees not to file any suit or arbitration with respect to) any and all claims, suits, causes of action, known or unknown, which Employee may have or hold against any or all of Employer and Employer's owners, shareholders, employees, officers, directors, assigns, parent, predecessors and successors, present and former affiliates, subsidiaries, legal representatives and agents (collectively, the "Releasees") and releases Releasees of and from all actions, causes of action, suits, debts, dues, sums of money, damages, judgments, executions, claims and demands whatsoever, whether individual or collective, in law or in equity, known or unknown, foreseen or unforeseen which Employee ever had, now has or which he or his heirs, executors, personal or legal representatives, administrators, successors or assigns hereafter shall, can or may have from the beginning of the world to the Employee's execution of this Agreement. The foregoing release includes, but is not limited to, any and all claims alleged in the Complaint and Demand, as well as any and all claims in any way arising out of, relating to or resulting from (a) Employee's employment with Employer or his separation from employment; (b) the Complaint and Demand; (c) any fact, statement, or conduct made on or occurring prior to the Employee's execution of this Agreement; (d) any employment or business custom, practice or policy of Employer; and/or (e) any conduct or decision of Employer which has in any way affected Employee or discussions leading up to and/or culminating in this Agreement. This does not include Employee's Workers' Compensation Claim.

This release includes, but is not limited to, a release of any and all rights Employee has to sue or bring any type of claim under (a) the Florida Civil Rights Act of 1992, (b) the Florida Minimum Wage Act, (c) the Florida Constitution, (d) the Fair Labor Standards Act, (e) the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*, ("ADEA") except as provided below, (f) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, (g) the Civil Rights Act of 1991, (h) the Civil Rights Act of 1866 and 1870, (i) 42 U.S.C. § 1981, as amended, (j) Executive Order 11246, (k) the Americans with Disabilities Act 42 U.S.C. § 12101, *et. seq*, as amended, (l) the Family and Medical Leave Act, as amended, (m) the Equal Pay Act of 1963, as amended, (n) the Immigration and Reform Control Act, as amended, (o) any other state, federal, and local law, regulation and ordinance dealing with discrimination in employment, disability, unpaid wages, wrongful discharge, and retaliation for exercising any right or participating or engaging in any activity, (p) the Occupational Safety and Health Act, as amended, (q) the Sarbanes-Oxley Act of 2002, as amended, (r) the Employment Retirement Income Security Act of 1974, as amended (except vested benefits), (s) the Worker Adjustment and Benefit Protection Act of 1990, as amended, (t) the Older Workers Benefit Protection Act of 1990, as amended, (u) the Worker Adjustment and Retraining Notification Act, as amended, (v) for any federal, state or common law claim or cause of action for breach of contract, unpaid wages, wrongful discharge, constructive discharge, retaliation, defamation, harassment, slander, liable, intentional or negligent infliction of emotional distress, misrepresentation, fraud, promissory estoppel, any other tort or negligence claim, or obligations arising out of any of Employer's employment policies or practices, employee handbooks and/or

3

any statements by any employee or agent of Employer whether oral or written; and (w) for reinstatement, back pay, bonuses, attorneys' fees, compensatory damages, costs, front pay, any form of equitable or declaratory relief, liquidated damages, emotional distress, personal injury, punitive damages, pain and suffering, medical expenses, damage to reputation, damage for personal, emotional or economic injury or damage of any kind.

This release does not release any claims the law does not permit Employee to release and Employee does not release the Workers' Compensation Claim.

Nothing in this Agreement shall be construed to prohibit Employee from enforcing this Agreement or from filing a charge or complaint with the Equal Employment Opportunity Commission, Florida Commission on Human Relations, local human rights agency, Securities and Exchange Commission, the National Labor Relations Board, or any other federal, state or local agency charged with the enforcement of any laws, or from participating in any investigation or proceeding conducted by these agencies, including providing documents or other information, or prevents him from exercising his rights under Section 7 of the National Labor Relations Act to engage in protected, concerted activity with other employees. Notwithstanding the foregoing, Employee agrees to waive his right to recover monetary damages in any charge, complaint, or lawsuit filed by Employee or by anyone else on his behalf, except for any right he may have to receive a payment from a government agency (and not Releasees) for information provided to the government agency. Employee assures Employer that as of the date of execution of this Agreement by Employee, Employee is not aware of any fact or circumstance that Employee believes creates any duty or obligation on the part of Employee to report any matter or concern to any governmental agency.

If the release of any claim described herein is found invalid, Employee acknowledges and agrees that such invalidity has no affect on the validity of any other release of claim and that this Agreement shall remain valid and enforceable so long as the release of claim provisions that are found valid and enforceable are acceptable to Employer.

7. <u>Class or Collective Action Claims</u>. Employee acknowledges and agrees that included among the claims released are any and all claims that have been, or may be, asserted by him or by any other person or entity on his behalf in any class or collective action relating to the Releasees including but not limited to Dollar Tree. Consistent with the terms of this Agreement:

(a) Employee waives any right to become, and promises not to consent to become, a member of any class in a case in which claims are asserted against the Releasees and that involve events which have occurred as of the date Employee signs this Agreement; and

(b) Employee waives any and all rights he might otherwise have to receive notice of any class or collective action. In the event that Employee is included or identified as a member, or potential member of a class in any proceeding against the Releasees, Employee agrees to opt out of the class at the first opportunity afforded to him after learning of his inclusion. In this regard, Employee agrees that he will execute, without objection or delay, an "opt-out" form presented to him in connection with such proceeding.

4

8. **Encumbrances.** Employee warrants and represents that there are no liens or encumbrances on his claims, including but not limited to Workers' Compensation liens, physicians' liens, and/or attorney liens. Employee expressly acknowledges that, in any case, all obligations to satisfy such liens are the sole responsibility of Employee, and not of Dollar Tree. Employee also agrees that if any liens or encumbrances on his claims should arise between the date he signs the Agreement and the date on which the funds identified in Paragraph 1 of this Agreement are paid and Dollar Tree is required by law to pay such lien or encumbrances, Dollar Tree's payment of the lien or encumbrance shall act as an offset to Dollar Tree's obligations to Employee set forth herein. This does not include the fees and costs owed, if any, by Employer to Employee under Fla. Stat. Sec. 440.34 in connection with the Workers' Compensation Claim.

9. **Denial of Liability.** It is expressly understood and agreed to by and among the Parties hereto that by entering into this Agreement, Employer and Employee do not admit the truth of the allegations made in the Complaint and/or Demand, and this is a compromise of disputed claims which should not be construed as an admission of liability on the part of any party. Employer expressly denies any wrongdoing or liability to the Employee.

10. **Review of the Agreement.** Employee acknowledges that he has carefully read this Agreement and understands all of its terms, and that he signs it voluntarily with full knowledge of its significance after adequate opportunity for consideration and consultation with an attorney. Employee represents that no payments or consideration have been promised to him for executing or delivering this Agreement other than those described herein, and that the payment and benefit described herein shall constitute the entire amount of consideration provided to him under the Agreement. Employee acknowledges that this amount constitutes adequate and sufficient consideration for the claims released herein and any other promises made under this Agreement. The recitals stated above are incorporated herein by reference. The Parties have each received or had the opportunity to receive independent legal advice from attorney(s) of their choice with respect to the preparation, review and advisability of executing this Agreement. Employee has consulted with counsel of his choice, Kevin Vorhis, prior to execution of this Agreement. The Parties acknowledge that they have executed this Agreement after independent investigation and without fraud, duress or undue influence.

11. **Medicare.**

(a) **General Acknowledgement of Medicare's Interest.** This settlement is based upon a good faith resolution of a disputed claim. The Parties have not shifted responsibility for medical treatment to Medicare in contravention of 42 U.S.C. Sec. 1395y(b). The Parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms, and to comply with both federal and state law. The Parties acknowledge and understand that any present or future action or decision by the Centers for Medicare & Medicaid Services or Medicare on this settlement, or Employee's eligibility or entitlement to Medicare or Medicare payments, will not render this release void or ineffective, or in any way affect the finality of this settlement.

5

(b) <u>Release as to Private Right of Action</u>. Employee agrees to waive any and all private causes of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A) et seq.

(c) <u>Representations That No Injuries or Illnesses Involving Medicals Are Claimed and No Liens Exist</u>. Employee affirms, covenants, and warrants that with the exception of the Workers' Compensation Claim, he has made no claim for illness or injury against, nor is he aware of any facts supporting any claim against Dollar Tree or the Releasees under which Dollar Tree or the Releasees could be liable for medical expenses incurred by Employee before or after the execution of this Agreement. Furthermore, Employee is aware of no medical expenses which Medicare has paid and for which Dollar Tree or the Releasees are or could be liable now or in the future. Employee agrees and affirms that, to the best of his knowledge, no liens of any governmental entities, including those for Medicare conditional payments, exist.

12. <u>All Compensation Paid</u>. Employee agrees and acknowledges that through this settlement he has been paid for all hours worked and all services provided as an employee of the Employer, including without limitation, all compensation (regular and overtime), bonuses, expenses, and all accrued but unused paid time off benefits, such as vacation.

13. <u>Assigns and Successors-in-Interest</u>. This Agreement shall be binding upon and inure to the benefit of the heirs, successors, and assigns of the Parties hereto.

14. <u>Employment Reference</u>. Employer has partnered with TALX to provide an automated employment income verification service known as "The Work Number" at 1-800-367-5690 or www.theworknumber.com. Dollar Tree's employer code for TALX is 13180. Dollar Tree does not permit field personnel to give out any former or current associate's personal information or work history, including employment verification. Employees shall refer any potential employers to The Work Number for all job verification and references related to their employment with Dollar Tree.

15. <u>Applicable Law</u>. The existence, validity, construction, and operation of this Agreement, and all of its covenants, agreements, representations, warranties, terms, and conditions shall be determined in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law.

16. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between the Parties, and fully supersedes all prior and/or contemporaneous agreements or understandings between the Parties which pertain to the subject matter hereof. The terms of this Agreement may not be contradicted by evidence of any prior or contemporaneous agreement and no extrinsic evidence whatsoever may be introduced to vary its terms in any proceeding involving this Agreement. This does not affect prior stipulations relating to Employee's Workers' Compensation Claim.

17. <u>Modification</u>. This Agreement may be modified, but only if the modification is in writing and signed by all parties to this Agreement.

18. <u>Severability</u>. Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall

6

not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement.

19. Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. Furthermore, signatures delivered via facsimile or electronic (e-mail) transmission shall have the same force, validity and effect as the originals of the signatures.

20. Joint Effort. The Parties stipulate that this Agreement was prepared by and is the joint effort of the Parties through negotiations. Accordingly, any ambiguity, uncertainty or vagueness in the construction and interpretation of this Agreement shall not be attributed to either Employee or Employer, and the theory of construction that a document should be construed against the party drafting the document is waived and will not be applied in construing this Agreement.

21. Review and Consultation. Employee acknowledges that: (a) this Agreement is written in terms and sets forth conditions in a manner which he understands; (b) he has carefully read and understands all of the terms and conditions of this Agreement; (c) he agrees with the terms and conditions of this Agreement; and (d) he enters into this Agreement knowingly and voluntarily. Employee acknowledges that he does not waive rights or claims that may arise after the date this Agreement is executed, that he has been given twenty-one (21) days from receipt of this Agreement in which to consider whether he wanted to sign it, that any modifications, material or otherwise made to this Agreement do not restart or affect in any manner the original twenty-one (21) day consideration period, that Employer advises Employee to consult with an attorney of the Employee's choice before Employee signs this Agreement, and that he was given the opportunity to consult with, and did consult with, an attorney prior to executing this Agreement. Employer agrees, and Employee represents that he understands, that Employee may revoke his acceptance of this Agreement at any time for seven (7) days following his execution of the Agreement and must provide notice of such revocation by giving written notice to the Employer by noon Eastern Standard Time on the eighth (8th) day after the execution of this Agreement. If Employee chooses to revoke his acceptance of this Agreement, he will give such notice to counsel for Employer at the following address: Theresa M. Waugh, Littler Mendelson, P.C., 111 North Magnolia Avenue, Suite 1250, Orlando, Florida 32801-2366. If not revoked by written notice received by the Employer on or before noon Eastern Standard Time the eighth (8th) day following the date of his execution of the Agreement, this Agreement shall be deemed to have become enforceable and effective at 12:01 p.m., Eastern Standard Time (the "Effective Date") on such eighth (8th) day.

7

IN WITNESS WHEREOF, and intending to be legally bound, the Parties have executed this Agreement as of the date stated below.

Agreed to and accepted by:

_____    _____11-13-17_____
Jesse Hinkle                                               Date

STATE OF __Floridia__  )
                                      )  ss.: _____ . _____
COUNTY OF __Orange__  )

SWORN TO AND SUBSCRIBED before me this __13__ day of __11__, 2017, by Jesse Hinkle who is personally known to me or has produced __Jesse L. Hinkle__ as identification.

_____
(Notary Signature)

(NOTARY SEAL)

__Yahaira Ortiz__
(Notary Name Printed)

YAHAIRA ORTIZ
Notary Public - State of Florida
My Comm. Expires Jul 15, 2018
Commission # FF 129554

8

Agreed to and accepted by:

_____   _11/20/17_
Dollar Tree Stores, Inc.                            Date

Name: _Amy MORRISSEY TURIC_
Title: _Assistant General Counsel, Employment_